IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOSEPH B. G.,[1]

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civil Action 2:23-cv-3276
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff, Joseph B. G. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 8); the Commissioner's Memorandum in Opposition (ECF No. 10); Plaintiff's Reply (ECF No. 11); and the administrative record (ECF No. 7). For the reasons that follow, Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

### I.    BACKGROUND

Plaintiff protectively filed his DIB application in January 2020, alleging that he became disabled on October 1, 2019. After Plaintiff's application was denied initially and on reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on August 3,

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

2022, at which Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On August 17, 2022, the ALJ issued a non-disability determination which became final on September 1, 2023, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. He contends that remand is warranted because the ALJ erred by failing to incorporate into his residual functional capacity ("RFC")[2] prior administrative findings from state agency reviewing psychologists. (Pl.'s Statement of Errors 10–18, ECF No. 8.) Specifically, Plaintiff contends that the ALJ erred by failing to find that Plaintiff was limited to one- to two-step tasks and instructions even though the state agency reviewers found that Plaintiff was so limited and the ALJ credited those findings. Defendant correctly contends that Plaintiff's contentions of error lack merit. (Df.'s Memo. in Opp., 6–13, ECF No. 10.)

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on August 17, 2022. (R. 17–31.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

substantial gainful activity from his October 1, 2019 application date until his date last insured. (*Id*. at 19.) At step two, the ALJ found that Plaintiff had the following severe impairments: mild neurocognitive disorder resulting from hypoxic brain injury; congenital heart block with pacemaker/defibrillator implantation; persistent depressive disorder; post-traumatic stress disorder ("PTSD"); and generalized anxiety disorder. (*Id*.) At step three, the ALJ found that through his date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 20.)

> Before proceeding to step four, the ALJ assessed Plaintiff's RFC as follows:
>
> After careful consideration of the entire record, the undersigned finds that,
>
> through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except . . . . Mentally, he can understand, remember, and carry out simple tasks and instructions. He is limited to no strict production quotas or fast-paced work such as on an assembly line.[4]

(*Id*. at 22.)

---

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[4] Because Plaintiff's contention of error is limited to his mental health limitations, the Court limits its discussion to the same.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a janitor because it entailed a medium exertion level and Plaintiff was limited to light work. (*Id.* at 29.) The ALJ also relied on VE testimony at step five to find that given Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (*Id.* at 29–30.) The ALJ, therefore, concluded that Plaintiff had not been disabled from his November 4, 2021 application date until his date last insured. (*Id.* at 30.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health and Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite

conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.  ANALYSIS

As previously explained, Plaintiff contends that reversal is warranted because the ALJ erred by crediting the state agency reviewers' findings but failing to incorporate one of them—a one- to two-step task limit—into his RFC without an adequate explanation for that omission. (Pl.'s Statement of Errors 10–18, ECF No. 8.) This contention of error lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3)

---

[5] Because Plaintiff's SSI application was filed in 2020, it is governed by regulations that apply to applications filed after March 27, 2017.

5

"[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. Instead, when an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, Plaintiff's file was reviewed initially by Aracelis Rivera, Psy.D., and on reconsideration by Irma Johnston, Psy.D. (R. at 86.) Dr. Rivera found that Plaintiff was limited to "1-2 step tasks." (R. at 78.) Likewise, Dr. Johnston found that Plaintiff was limited to "1-2 step task instructions" and "1-2 step tasks in settings where there is no demand for a fast pace." (R. at 90.)

6

After accurately summarizing these findings, the ALJ determined that they were persuasive, writing as follows:

> These opinions are generally supported by the bulk of the objective medical evidence in the record, which shows persistent complaints of cognitive difficulty with memory, as well as difficulty with focus, with some noted impairment to concentration and memory during examinations. No further limitation is necessary, given the claimant's average intelligence and his otherwise largely normal mental status examinations, improvement with therapy, and independence with activities of daily living. The undersigned finds the mental opinions persuasive, but has rephrased the limitations to understand, remember and carry out simple tasks and instructions and no strict production quotas or fast-paced work such as on an assembly line, instead of using more ambiguous "number of steps" language, to remain compliant with the Act.

(*Id*. at 27.)

As this discussion demonstrates, the ALJ replaced the reviewers' recommended one- to two-step task limit with a simple task limit. (*Id*.) Plaintiff contends that this was reversible error. Plaintiff notes that on cross examination, the VE indicated that a person limited to one- to two-step tasks would only be capable of jobs with a Reasoning Development Level[6] of 1[7] but that a person limited to simple tasks and instructions would instead be capable of Level 2[8] jobs. (Pl.'s

---

[6] Each job in the *Dictionary of Occupational Titles* ("DOT") is assigned a General Educational Development ("GED") score, which considers the reasoning, mathematical, and language development required for satisfactory job performance. *See Dictionary of Occupational Titles*, Components of the Definition Trailer, 1991 WL 688702 (1991). Reasoning development is divided into six levels. *Id.*

[7] Reasoning Level 1 is described as follows: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." 1991 WL 688702.

[8] Reasoning Level 2 is described as follows: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." 1991 WL 688702.

7

Statement of Errors 11–12, ECF No. 8 (citing R. at 65-66).) Accordingly, Plaintiff argues, by substituting a simple task limit for the one- to two-step task limit, the ALJ crafted a less restrictive RFC than the one proposed by the reviewers. Additionally, Plaintiff asserts, the ALJ's explanation for doing so was inadequate. (*Id*. at 12, 14.) The ALJ indicated that he intended to rephrase the one- to two-step task limit using less ambiguous terms. But, Plaintiff argues, substituting a simple task limit for the one- to two-step task limit resulted in a substantive difference instead of a mere clarification.

As the Commissioner correctly notes, Plaintiff's contention appears to be predicated on a finding that a person with a one- to two-step task limit is limited to Level 1 jobs and cannot perform Level 2 jobs. (Df.'s Memo. in Opp., 2, 8, ECF No. 10.) Despite the VE's testimony, however, at least several courts have found no conflict between a one- to two-step task limit and an ability to do Level 2 work (although generally in the context of a challenge to the consistency of a VE's testimony with DOT job descriptions instead of a challenge to an ALJ's assessment of medical opinions or administrative findings). *See e.g.*, *Kerr v. Comm'r of Soc. Sec.*, No. 2:13-CV-457, 2014 WL 4243771, at *4 (S.D. Ohio Aug. 26, 2014) (collecting cases) (finding that "a survey of governing authority reflects that the RFC limitation of 'one or two-step instructions' . . . corresponds with jobs classified at DOT Reasoning Development Level Two"); *Cooper v. Comm'r of Soc. Sec.*, Case No. 3:07CV300, 2008 WL 4405045, at *10 (S. D. Ohio Sept. 24, 2008) (finding ". . . that Plaintiff's limitation to low stress work with no production quotas, simple one or two-step tasks requiring little, if any, concentration, and no complex or detailed instructions is not inconsistent with the ability to perform jobs with a reasoning Level of 2."); *Russell v. Comm'r of Soc. Sec.*, Case No. 1-13-cv-291, 2014 WL1333262, at *13 (N.D. Ohio

Mar. 31, 2014 ) (finding no conflict between the claimant's limitation to simple one- or two-step instructions and the ability to perform jobs with reasoning Level 2). *See also Hall v. Astrue*, Case No. 1:09 cv 2514, 2010 WL 5621291, at *12 (N.D. Ohio) (rejecting argument that a limit to simple, repetitive one- to two-step tasks was consistent only with work at DOT reasoning Level 1; the plaintiff could not use DOT reasoning level requirements to rebut VE testimony), *accepted and aff'd sub nom.*, *Hall v. Comm'r of Soc. Sec.,* 2011 WL 194615 (N.D. Ohio Jan. 20, 2011).

Plaintiff asserts that "more recent" authority undermines these cases. (Pl.'s Reply 4–5, ECF No. 11.) But the authority cited by Plaintiff is unavailing. In *Joyce*, the plaintiff argued that a "limitation to 'simple, one-, two, three-step instructions' is inconsistent with jobs requiring reasoning level *three*." *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 435 (6th Cir. 2016) (emphasis added). Here, Plaintiff asserts that a one- to two-step task limit is inconsistent with jobs requiring reasoning *Level 2*. Likewise, in *Brandon C.*, the Plaintiff argued that the ALJ erred by failing to resolve conflicts in a VE's testimony after the VE testified that a hypothetical person who was limited to "*simple routine*" work would be limited to Level 1 work. *Brandon C. v. Comm'r of Soc. Sec.*, Case No. 2:21-CV-301, 2022 WL 1025026, at *4 (S.D. Ohio April 6, 2022) (emphasis added). In this matter, Plaintiff argues that a hypothetical person who is limited to *one- to two-step tasks* is limited to Level 1 work. *Id*. Moreover, in *Brandon C.*, the Commissioner did not dispute that the ALJ committed error, but instead argued that any error was harmless. *Id*. at *5. Here, the Commissioner both disputes that there was error, and argues that if there was, it was harmless. (Df.'s Memo. in Opp., 6–13, ECF No. 10.)

The Court declines to find that a one- to two-step limit necessarily precludes a claimant from performing Level 2 work; that a one- to two-step task limit is more restrictive than a simple task limit; or that the ALJ erred by substituting a simple task limit for the reviewers'

9

recommended one- to two-step task limit. Instead, the Court finds that even if the ALJ erred by failing to incorporate a one- to two-step limit into Plaintiff's RFC, any error was harmless.

The VE testified that a hypothetical person with Plaintiff's RFC, but who also had additional social interaction limits and a one- to two-step task limit, would be able to perform the job of cleaner housekeeping, which was a Level 1 job. (R. at 66, 61–62.) The VE further testified that there were approximately 175,000 such jobs in the national economy. (Id. at 61–62.) The Commissioner can meet its burden at step five if a claimant can perform even a single job that is available in the national economy, provided that a "significant number" of available positions exist for that job. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009). Although the "boundary between a 'significant number' and an insignificant number of jobs" is determined "on a case-by-case basis," courts regularly hold that far fewer numbers of jobs are significant. *Id.* (internal quotation marks omitted) (2,000 jobs in the national economy constituted a significant number) (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). *See also Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs nationwide amounted to "significant numbers" of available jobs); *Geiger v. Apfel*, Case No. 99-5590, 2000 WL 1257184, at *2 (6th Cir. July 10, 2000) (75,000 jobs nationally was a significant number)). Because the evidence establishes that Plaintiff could perform a significant number of jobs even if the ALJ had limited him to one- to two-step tasks, any error the ALJ committed by omitting that limit from Plaintiff's RFC was harmless.

Notably, in his Reply, Plaintiff does not respond to the Commissioner's argument that the housekeeping cleaner job alone provided a significant number of jobs. Instead, Plaintiff argues that remand is warranted because the ALJ did not explicitly find that the 175,000 housekeeping cleaner jobs constituted a significant number of jobs. (Pl.'s Reply 5, ECF No. 11.) But Plaintiff

10

bears the burden of showing that the outcome would have been different if the ALJ had included in his RFC the one- to two- step task limit. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally . . . we review decisions of administrative agencies for harmless error"). Plaintiff has failed to do so.

For all these reasons, the Court finds that the ALJ did not commit reversible error when assessing the state agency reviewers' findings. Plaintiff's contention of error lacks merit.

V. CONCLUSION

In sum, the Court finds that Plaintiff's contention of error lacks merit. Therefore, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE